JACOB S. ROSENTHAL, SARAH MYERS, and LEWIS MYERS *vs.* THE MARYLAND BRICK COMPANY, and others.

*Lien of Mortgage—Mechanics' Liens—Question of Priority— Construction of sec. 14 of Art. 24, of the Code, relating to the Recording of Deeds, and of sec. 15 of Art. 61, of the Code, relating to Mechanics' Liens.*

On the 24th of October, 1881, J. R. and S. M., entered into a written agreement under seal with T. for the lease to T. of certain unimproved lots of ground in the City of Baltimore, with a covenant on the part of T. to build houses on said lots, and to begin the same "immediately, and to continue their erection uninterruptedly except prevented by stress of bad weather, until finally completed and fit for occupation." The agreement provided also for the execution of a lease as soon as it could be prepared. T. assigned one-half of his interest under this contract to J. G. M., and about the 1st of November, 1881, he and said J. G. M. entered and began work,

Rosenthal, *et al. vs.* Maryland Brick Co., *et al.*

digging cellars, &c.; with the knowledge of J. R. On the 30th of November the lease was executed to T., and J. G. M., but was not recorded until the 16th of December. On that day, T. and J. G. M. executed a mortgage of their leasehold interest to J. R., and S. M., to protect the latter from loss in becoming security for the mortgagors for lumber to be used in the erection of the houses being constructed on the property mortgaged. This mortgage and the lease of the 30th of November, were simultaneously filed for record on the said 16th of December, 1881. HELD:

1st. That by section 14 of Article 24, of the Code, the lease dated the 30th of November, though not recorded until the 16th of December, took effect in the absence of any agreement to the contrary, on and from its date; and that mechanics' liens for work and materials furnished in the construction of said houses, were entitled to priority over said mortgage.

2nd. That there was no difference between material men, and workmen in respect to the time when and from which their liens respectively attached.

3rd. That sec. 15 of Art. 61, of the Code, postpones all mortgages and other liens attaching subsequently to the commencement of a building, in favor of all mechanics' liens thereon, whether for work done, or materials furnished in its construction, and whether done or furnished before or after the attaching of such mortgages or other liens.

The case of *Robinson, et al. vs. Consolidated Real Estate and Fire Insurance Company,* 55 *Md.,* 105, explained.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. By an agreement filed in the cause, it appears that some of the mechanics' liens allowed in " Audit C," were for work and materials furnished subsequently to the 16th of December, 1881, the day on which the lease and the mortgage to Rosenthal and Myers were recorded.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*Isidor Rayner,* for the appellants.

*James Pollard, M. Sonnehill,* and *R. D. Morrison,* for the appellees.

IRVING, J., delivered the opinion of the Court.

The sole question for decision, on this appeal, is whether the appellants' mortgage was properly postponed, in the distribution of certain funds in the hands of a receiver in the Circuit Court of Baltimore City, in favor of the liens of the appellees, which were by the Circuit Court adjudged to have priority. Two audits were made by the auditor, in·pursuance of the directions of the counsel for the respective parties. Audit " B " allowed appellants' claim. Audit " C " gave precedence to the claims of the appellees as mechanics' liens. The appellants excepted to audit " C," and the appellees to audit " B." The Court adjudged the mechanics' liens to have priority over the appellants' mortgage, and ratified audit " C," and rejected audit " B." The facts necessary to be known, in order to understand how the question arises, are as follows: On the 24th of October, 1881, the appellants Rosenthal and Myers, and their wives, entered into a written agreement with Joseph S. Tucker, for the lease to Tucker of certain. unimproved property in the City of Baltimore, at the north-east corner of Townsend and Mount streets, for ninety-nine years, with covenant for renewal. This agreement sets out the terms of the lease, and contains a covenant on the part of Tucker to build eight houses on the property according to specifications agreed on by the parties; which he was to begin " immediately, and to continue their erection uninterruptedly, except prevented by stress of bad weather, until finally completed and fit for occupation." The concluding clause in this agreement is as follows: " It is lastly agreed, that the ground rent is not to commence to run until July 1st, 1882 ; and in order to avoid all possible delay in the commencement of said buildings, it is agreed on the part of said parties of the first part, to execute

unto said Tucker a lease as aforementioned, which has been already ordered to be prepared, and that the said Tucker may suffer no delay in awaiting the formal execution thereof." This agreement was under seal and was signed by all the parties including Tucker. On the 27th of October, Tucker, in writing, on this contract endorsed an assignment of one-half interest therein to John G. Mitchell. Under this contract the parties entered and began working about the first of November, digging cellars, &c., with the knowledge of the appellant Rosenthal. On the 30th of November, the lease was executed to Tucker and Mitchell; and on the same day another agreement with Tucker and Mitchell was made reciting that the lease was about being executed to them, and setting out with greater particularity than the original of 24th of October, the terms of leasing and the stipulations respecting the buildings. On the 16th of December, 1881, Tucker and Mitchell executed a mortgage to Jacob S. Rosenthal and Sarah Myers of this leasehold property. The mortgage recites an agreement on the part of the mortgagees to become security for Tucker and Mitchell to Jackson & Brother of Baltimore, for lumber to the extent of two thousand dollars, to be used in the construction of houses on the property mortgaged. This mortgage and the lease dated the 30th of November, 1881, were simultaneously filed for record on the 16th of December, 1881, as appears by the endorsement of the clerk receiving the same for record.

After the improvements were erected upon the leasehold property, but before they were entirely completed, Tucker and Mitchell became involved, and were unable to continue their enterprise. A bill was filed for a dissolution of their partnership, the appointment of a receiver, and the sale of the property; through which proceedings the fund arises for distribution; and the question is, shall

the mortgage be accorded priority over the mechanics' liens, or any of them.

By the 15th section of Article 61 of the Code, the lien given mechanics and material men, for work done and materials furnished is "preferred to all mortgages, judgments, liens, and encumbrances which attach upon the buildings or grounds covered thereby, subsequently to the commencement thereof, and all mortgages and liens other than liens which have attached thereto prior to the commencement of the said building, and which by the laws of this State are required to be recorded, shall be postponed to said lien, unless recorded prior to the commencement of said building." In this case the title to the property was not actually put into Tucker and Mitchell, until the lease was executed on the 30th of November, 1881; but the parties had entered under a contract to lease executed on the 24th of October preceding, and had begun work about the 1st of November. By section 14 of Article 24 of the Code, the lease dated the 30th of November, though not recorded till the 16th of December, took effect as and from its date, unless the agreement set up by appellants is found to be established, and gives it a different effect and operation.

The appellants base their claim to priority on an alleged agreement with Tucker and Mitchell, that they were not to be divested of their title, until they (Tucker and Mitchell) had "completed all their arrangements for providing lumber and bricks for the completion of all the eight houses," and that this was a condition precedent to their obtaining any rights in the property proposed to be leased. They contend that in pursuance of that agreement and condition precedent the lease though executed on the 30th of November, was not delivered, but was retained by Rosenthal until the mortgage was executed, and that then both lease and mortgage were recorded at one and the same time; that the lease, mortgage and guaranty to

Jackson was a concurrent transaction to be consummated at the same moment of time ; that it was "thoroughly understood on all hands that the whole business was a single transaction." It is therefore contended by the appellants that no legal or equitable title passed to the lessees until the 16th December, 1881 ; and that the mechanics' liens did not attach until after the lessees had acquired title. We do not find it necessary to discuss the effect of such an agreement, as we do not find the same satisfactorily established by the proof.

*Prima facie*, the papers were all intended to operate according to their date, and in accordance with the rules ordinarily applicable to them. The presumption, at least, is that way ; and the *onus* is on the appellants, by competent and *sufficient* testimony, to show that an effective agreement to the contrary certainly existed. The only testimony on the part of the appellants relied on as proving such agreement comes from Mr. Rosenthal and Mr. Myers. Rosenthal says there was such verbal agreement, and that the lease was not left with him for record, but for retention, till the condition precedent to its delivery was complied with. Myers says he only heard part of the conversations, but he understood there was such an agreement. Waiving the question, which is raised, whether evidence of any such parol agreement is admissible to vary the written papers, which are ordinarily supposed to embody the final agreement of the parties, we think the appellants fail to establish the existence of such agreement or condition precedent. Tucker as positively denies it, as Rosenthal asserts it ; and Mitchell's testimony offsets that of Myers. Like Myers, he was not present at all the conversations, but was present at part, and he says he never heard of any such condition precedent. Tucker states most positively that the lease was left with Rosenthal for record, and for no other purpose. Here is such conflict that the Court must look at the papers signed by

the parties as containing the only agreement between them.

The original agreement for the lease was made with Tucker alone, and was dated the 24th of October, 1881. On the 27th of the same month, a half interest in the contract was assigned to Mitchell. This original agreement was not only delivered, but entry under it was immediately made, and work was begun. The idea of such condition precedent, as ·is insisted upon, is excluded by the language of that agreement, which provides for the *immediate* beginning of work and its uninterrupted prosecution, and that Tucker was to "suffer no delay by reason of the delay in the formal execution" of the lease. A new agreement was executed by the parties on the same day on which the lease was executed. This new agreement makes no mention of any condition precedent, such as that which is set up, or any qualifying condition. The lease makes no allusion to any such agreement or condition. The mortgage executed on the 16th of December, recognizes the lease as subsisting, valid and complete, and contains no recitals sustaining the contention of the appellants. The internal evidence of the papers, therefore, repel the idea of any condition precedent. In view of all these facts and the express denial of the lessees that they ever agreed to any such thing, we would not be warranted in finding the existence of an agreement for the condition precedent on which appellants rely in support of their claim to priority.

The Circuit Court was clearly right in ratifying Audit "C," which accorded the priority to the mechanics' liens over the mortgage claim of the appellants, under section 15, of Article 61, of the Code; and in rejecting Audit "B." The contention was made by the appellants' counsel in his brief and at the hearing, that this Court had drawn a distinction between material men and workmen, in respect to the time when, and from which, their liens re-

spectively attached; and insisted that material men did not fall within the provisions of section 15, Art. 61, under the language of the Court in *Robinson and others vs. Consolidated Real Estate and Fire Insurance Company*, 55 *Md.*, 111. On the contrary the Court expressly says, that section 15 does postpone all mortgages and other liens attaching subsequently to the commencement of the building in favor of all mechanics' liens. This statement immediately follows the two sentences giving rise to the contention, and explain what otherwise would have justified the construction given them. The sentences referred to were unnecessary to the discussion and decision in that case, and were intended to be eliminated, but, by accident, were not. The law does not make any distinction between the two classes of mechanics' lien holders. All the mechanics' liens in this case were properly accorded priority over the mortgage of the appellants, and the order of the Circuit Court ratifying Audit "C" will accordingly be affirmed.

*Order affirmed.*

(Decided 26th March, 1884.)